**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Case No.: |
| | ) | |
| VILLAGE OF DOLTON; AJA SEATS, special administrator for Decedent John Kyles; SABRINA WRIGHT, guardian for Duane Dunlap, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, American Alternative Insurance Corporation ("AAIC"), by and through its undersigned counsel, and for its Complaint for Declaratory Judgment against Defendants the Village of Dolton, Illinois ("Dolton" or "the Village"), Aja Seats, special administrator for Decedent John Kyles ("Kyles"), and Sabrina Wright, guardian for Duane Dunlap ("Dunlap") (collectively "Judgment Creditors" or "Claimants") states as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201. In this action, AAIC seeks a determination of its rights and obligations to the Village and Judgment Creditors pursuant to an insurance policy issued by AAIC to the Village in connection with the underlying lawsuit, captioned *Seats, et. al. v. Village of Dolton et. al.,* No. 2019 L 012256, filed in the Circuit Court of Cook County, Illinois (the "Underlying Action").

## JURISDICTION AND VENUE

2.      This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a), as this action is between citizens of different states and the amount in controversy exceeds $75,000.

4.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b) because the Village and the Judgment Creditors reside in this district and this action arises out of a transaction or some part thereof that occurred in this district.

## THE PARTIES

5.      Plaintiff AAIC is a corporation organized and existing under the laws of Delaware, with its principal place of business in Princeton, New Jersey.  At all relevant times, AAIC was authorized to conduct business in the State of Illinois.

6.      Defendant the Village of Dolton is a municipal corporation organized and existing under the laws of Illinois with its principal place of business in Cook County, Illinois.

7.      Defendant Aja Seats is special administrator for Decedent John Kyles. Upon information and belief, Ms. Seats is a resident of Aurora, Illinois.

8.      Defendant Sabrina Wright is  guardian for Duane Dunlap. Upon information and belief, Wright and Dunlap are residents of Plainfield, Illinois.

## THE POLICY

9.      AAIC issued Retained Limit Policy No. N1-A2-RL-0000044-01 to the Village of Dolton for the policy period August 5, 2016 to August 5, 2017 (the "Policy"). A true and correct copy of the Policy is attached as Exhibit A.

10.     The Policy, subject to its terms and conditions, provides three coverage parts: (1) Wrongful Acts Liability with limits of $6,000,000 each Wrongful Act and in the Aggregate excess of a retained limit of $100,000; (2) General Liability with limits of $6,000,000 each Occurrence and in the Aggregate, excess of a retained limit of $100,000; and (3) Automobile Liability with limits of $6,000,000 each Accident and in the Aggregate, excess of a retained limit of $100,000. Exhibit A at AAIC 00005.

11.     In the Liability Conditions, Definitions, and Exclusions provision of the Policy, the Policy contains the following:

CONDITIONS

All Liability Coverage Parts included in this policy are subject to the conditions in the Policy Conditions and following Liability Conditions except as otherwise indicated:

\*                         \*                         \*

G.     When **Ultimate Net Loss** Is Payable

This policy will NOT apply until you are obligated to pay the amount of the **Retained Limit** covered under this policy.  When the amount of **Ultimate Net Loss** has finally been determined as provided in the Defense and Indemnity provision in the C overage Part, we will promptly indemnify you in the amount of the **Ultimate Net Loss** covered under this policy.

\*                         \*                         \*

H.     Duties In The Event of **Accident, Occurrence, Wrongful Act or Claim**

\*                         \*                         \*

**5.     Claims** Administration

a.     You are responsible for the administration, investigation, or settlement of any loss damage, expense or **Claim** covered under this policy. …

Exhibit A at AAIC 00011-14.

3

12.     In the Liability Conditions, Definitions, and Exclusions provision of the Policy, the

Policy contains the following Law Enforcement Activities exclusion:

> EXCLUSIONS
>
> All Liability Coverage Parts included in this policy are subject to any applicable exclusions in the Coverage Part and the following Exclusions except as otherwise indicated:
>
> The insurance under any Liability Coverage Part in this policy does NOT apply to:
>
> \*                                \*                                \*
>
> 7.     Any liability arising out of law enforcement activities of any of your law enforcement departments or agencies, except with respect to the General Liability and **Automobile** Liability Coverage Parts to the extent coverage is provided under the Law Enforcement Endorsement if attached to such Coverage Parts.

Exhibit A at AAIC 00028-29.

13.     The Defense and Indemnification section of each coverage part of the Policy

provides as follows:

> DEFENSE AND INDEMNIFICATION
>
> 1.     We have no duty to defend a **Claim** against an **Insured. . . .**.
>
> \*                                \*                                \*
>
> 3.     You have the duty to defend any **Claim** to which this insurance applies and shall be responsible for the **Ultimate Net Loss** up to the **Retained Limit**.
>
> 4.     When the **Ultimate Net Loss** exceeds the **Retained Limit**, for which you become legally obligated to pay because of an **Occurrence** covered under this Coverage Part, you will be entitled to indemnification by us under this Coverage Part.  You shall apply for indemnification as soon as practicable after the **Ultimate Net Loss** has been determined to exceed the **Retained Limit**.  We will promptly indemnify you in excess of the **Retained Limit** subject to the Excess Limit of Insurance for this Coverage Part shown on the Declarations page.

5.      Your obligation to pay the **Ultimate Net Loss** must be evidenced either by a judgment against you after the actual trial, or by an arbitration award entered as a judgment, or by a written settlement executed by you and the claimant.

6.      You must obtain our prior written approval before offering or agreeing to pay an amount which is in excess of the **Retained Limit** in order to settle any **Claim** under this Coverage Part.

7.      We shall have the right and you shall avail us of the opportunity to associate with you in the defense of any Claim that in our sole opinion may create indemnification obligations for us under this Coverage Part,

Exhibit A at AAIC 00036, 00041, 00047.

14.      The Insuring Agreement for the Wrongful Act Liability Coverage Part provides in

pertinent part:

A.  INSURING AGREEMENTS

1.  In return for the payment of premium, we agree with you to indemnify **Insureds** for **Ultimate Net Loss**, in excess of the **Retained Limit**, that results from damages the Insured becomes legally obligated to pay because of a **Wrongful Act** to which the insurance under this Coverage Part applies.

Exhibit A at AAIC 00045.

15.      The General Liability Coverage Part provides in pertinent part:

A.  INSURING AGREEMENTS

1.  In return for the payment of the premium, we agree with you to indemnify **Insureds** for **Ultimate Net Loss**, in excess of the **Retained Limit**, that results from damages the **Insured** becomes legally obligated to pay because of **Bodily Injury**, **Personal Injury**, **Advertising Injury** or **Property Damage** to which the insurance under this Coverage Part applies, provided that:

a. The **Bodily Injury**, **Personal Injury**, **Advertising Injury**, or **Property Damage** is caused by an **Occurrence** that takes place in the **Coverage Territory**; and

        b.  The **Occurrence** occurs during the **Policy Period**;

Exhibit A at AAIC 00035.

16.     The General Liability Coverage Parts contain the following exclusions:

The insurance under this Coverage Part does NOT apply to:

     1.  Any **Bodily Injury**, **Property Damage**, **Personal Injury or Advertising Injury** for which coverage is provided under another Coverage Part of this policy.

         *                  *               *

     7.  Any **Property Damage** to:

        a.  Property owned, occupied, or leased by an **Insured** or purchased by an **Insured** under installment sales contract or property on consignment to an **Insured**;
        b.  Property loaned to an **Insured**;
        c.  Personal property in the care, custody or control of an **Insured**, except to the extent coverage is provided under the Law Enforcement Endorsement, if attached to this Coverage Part;

Exhibit A at AAIC 00037-38.

17.     The Insuring Agreement in the Automobile Liability Coverage Part provides as follows:

In return for the payment of the premium, we agree with you to indemnify **Insureds** for the **Ultimate Net Loss**, in excess of the **Retained Limit**, that results from damages the **Insured** becomes legally obligated to pay because of **Bodily Injury** or **Property Damage** to which this insurance under this Coverage Part applies, first arising out of an **Accident** during the **Policy Period** and resulting from the ownership, maintenance or use of a **Covered Automobile** in the **Coverage Territory**.

Exhibit A at 00041.

18.     The Automobile Liability Coverage Part contains the following exclusion:

The insurance under this Coverage Part does NOT apply to:

     1.  Any **Bodily Injury** or **Property Damage** for which coverage is provided under another Coverage Part of this policy.

       *      *      *

6. Any **Property Damage** to or involving property owned or transported by the **Insured** or in the **Insured's** care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement or to the extent coverage is provided under the Law Enforcement Endorsement, if attached to this Coverage Part.

7. **Bodily Injury** or **Property Damage** resulting from the handling of property:

  a. Before it is moved from the place where it is accepted by an **Insured** for the movement into or onto the **Covered Automobile**; or

  b. After it is moved from the **Covered Automobile** to the place where it is finally delivered by an **Insured**.

Exhibit A at 00042-43.

19. The Policy also contains a Law Enforcement endorsement that applies to the Automobile Liability Coverage Parts, which provides:

This coverage extension is subject to all terms and conditions of the **Automobile** Liability Coverage Part to which this coverage extension is attached, except as otherwise stated below.

A. INSURING AGREEMENT

In return for the payment of the premium, the **Automobile** Liability Coverage Part is extended to indemnify **Insureds** for **Ultimate Net Loss** in excess of the **Retained Limit** shown in the Schedule above that results from damages the **Insured** becomes legally obligated to pay because of your law enforcement activities, first arising out of an **Accident** during the **Policy Period** and taking place in the **Coverage Territory**.

Exhibit A at 00055.

20. The following definitions apply to both the General Liability Coverage Parts and the Automobile Liability Coverage Parts:

All Liability Coverage Parts included in this policy are subject to any applicable definitions in the Coverage Part and the following definitions, except as otherwise indicated:

1. **Accident**

    *Means:*

An accidental event, including continuous or repeated exposure to substantially the same general harmful conditions which results in **Bodily Injury** or **Property Damage**. All such exposure to substantially the same general conditions will be considered as arising out of one **Accident**.

    \*                       \*                   \*

5. **Automobile**

    *Means:*

    a. A land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment; or

    b. Any other land vehicle that is subject to compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, **Automobile** does not include **Mobile Equipment**.

6. **Bodily Injury**

    *Means:*

    Injury to the body, sickness or disease, including death resulting from any of these at any time, and if arising out of the foregoing: mental anguish, mental injury, disability, shock or fright.

    \*                       \*                   \*

12. **Electronic Data**

    *Means:*

    Information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment. This includes such information, facts or programs only while they are in an electronic format.

    \*                       \*                   \*

26. **Occurrence**

*Means*:

a. With respect to **Bodily Injury** and **Property Damage**, an accidental happening, including continuous or repeated exposure to substantially the same general harmful conditions which results in **Bodily Injury** or **Property Damage**. All such exposure to substantially the same general conditions will be considered as arising out of one **Occurrence**;

\*                    \*                    \*

Only one policy issued by us, one **Retained Limit** and Excess Limit of Insurance is applicable to any one **Occurrence**.

\*                    \*                    \*

37. **Property Damage**

*Means:*

a. Physical injury to tangible property, including all resulting loss of use of such property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

For purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exhibit A at 00014-24.

## THE UNDERLYING ACTION

21.     On or about October 20, 2016, Aja Seats, Special Administrator for Deceased person John Christopher Kyles, and Duane Dunlap filed suit against the Village of Dolton, Dolton Police Sergeant Lewis Lacey, Dolton Police Officer Ryan Perez (in their individual capacities),

unknown police officers, and Demetrius Sorrells, in the Circuit Court of Cook County, Law Division, Case No. 2016 L 010353.

22.     On or about November 4, 2019, the court allowed Plaintiffs to voluntarily dismiss the lawsuit with leave to refile.

23.     On or about November 5, 2019, Aja Seats, Special Administrator for Deceased person John Christopher Kyles, and Duane Dunlap re-filed their lawsuit against the Village of Dolton, Dolton Police Sergeant Lewis Lacey, Dolton Police Officer Ryan Perez (in their individual capacities), unknown police officers, and Demetrius Sorrells in the Circuit Court of Cook County, Law Division, Case No. 2019 L 012256. A true and correct copy of the Complaint is attached hereto at Exhibit B.

24.     The Complaint alleges that on or about October 9, 2016, Kyles and Dunlap were passengers in a car driven by Demetrius Sorrells ("Sorrells").

25.     The Complaint alleges that unknown police officers chased the car driven by Sorrells at a very high rate of speed resulting in a fatal crash at approximately 14239 Greenwood Road, Dolton, Illinois.

26.     The Complaint alleges that Kyles died on the scene as a result of injuries sustained as a result of the police chase and crash.

27.     The Complaint alleges that Dunlap suffered severe, catastrophic, and permanent injuries.

28.     The Complaint alleges that a Dolton squad car involved in the case was equipped with dash cam video and audio recording ability.

29.     The Complaint alleges that  upon the squad car's emergency lights being activated, the dash cam automatically turned-on.

10

30.    The Complaint alleges that Officer Perez activated the emergency lights on his squad car.

31.    The Complaint alleges that pursuant to Dolton's internal rules and regulations, Illinois state standards, an October 17, 2016 preservation letter from Claimants to the Dolton Police Chief Collins and the October 21, 2016 preservation order, the Village was required or was under a duty to preserve video and audio evidence of the police chase.

32.    The Complaint alleges that the Village did not produce the dash cam video or audio from Officer Perez's squad car.

33.    The Complaint alleges that Officer Perez disabled the ability of the GPS unit in his squad car to record his maximum speed.

34.    The Complaint alleges that the Village engaged in spoliation of evidence by failing to preserve the audio of Officer Bruno's dash cam and by failing to preserve dash cam video and audio as to Officers McNeal, Johnson, and Sheehan.

35.    The Complaint alleges that the Village is responsible under *respondeat superior* for the actions of its agents.

36.    The Complaint contains numerous counts, including, but not limited to, claims for willful and wanton conduct for the wrongful death of John Kyles and the injury to Duane Dunlap and for spoliation of evidence.

37.    Because the Policy is an indemnity only policy and does not provide a duty to defend, the Village of Dolton selected and retained its own counsel, Attorney Michael Bersani, who represented the Village and Officers Lacey and Perez and controlled the defense in the Underlying Action.

38.     Pursuant to the terms of the Policy, AAIC exercised its right to associate in the defense of the Underlying Action and retained counsel to associate in the defense.

39.     During discovery in the Underlying Action, driver Sorrells testified at his deposition that he was driving passengers Kyles and Dunlap when he saw a police vehicle make a U-turn behind him and activate its emergency lights. Sorrells accelerated and tried to flee because he did not have a driver's license and he had been drinking. He testified that it did not matter what the police officers did, he wanted to get away.

40.     The claims against Officer Perez were dismissed prior to trial.

41.     Ultimately, two claims went to verdict in the Underlying Action: (1) willful and wanton conduct for the wrongful death of Kyles and the injury to Dunlap brought against Officer Lacey and the Village; and (2) negligent spoliation of evidence against the Village.

42.     There was evidence presented at trial that on October 9, 2016 at approximately 1:00 am Sorrells was driving northbound on Greenwood Avenue in the Village of Dolton.

43.     Sorrells attempted to stop at a stop sign, but his vehicle slid across the white line into the intersection.

44.     Evidence was presented at trial that Officer Lacey made a U-turn and activated his emergency lights with the intent of making a traffic stop, but Sorrells did not stop and continued driving on Greenwood Avenue.

45.     Officer Perez was driving on Greenwood Avenue when Sorrells' vehicle passed Officer Perez on his left and pulled into the oncoming lane of traffic. Officer Perez turned on his siren and lights and followed in pursuit.

46.     There was evidence presented at trial that the speed limit on Greenwood Avenue was 40 mph.

47.     A forensic engineering and accident reconstruction expert testified at trial that while Officers Lacey or Perez were in pursuit of Sorrells' vehicle, Sorrells' vehicle's maximum speed was 72 miles per hour and its average speed was 68 miles per hour. Further evidence was presented that Sorrells did not stop at multiple traffic signals while the officers were pursuing him.

48.     At trial, there was testimony that Greenwood Avenue ends at the intersection with Chicago Avenue and turns into Lou Boudreau Drive, which is a one-way street in the direction opposite of the direction Sorrells' vehicle was traveling on Greenwood Avenue and ends in a T intersection.

49.     There was testimony at trial that Sorrells drove past a "Do Not Enter" sign, onto Lou Boudreau Drive traveling in the opposite direction of one-way traffic when he lost control of his car and crashed into a garbage dumpster.

50.     In discovery in the Underlying Action, the Village did not produce dashcam footage of the pursuit of Sorrells' vehicle.

51.     After hearing the testimony at trial, on August 3, 2022, the jury found in favor of the Village and Officer Lacey  on the claim for willful and wanton conduct for the wrongful death of John Kyles and the injury to Duane Dunlap.

52.     The jury found in favor of Claimants on the negligent spoliation of evidence claim against the Village and awarded the Claimants $33,500,000 on the spoliation of evidence claim only.

53.     On August 8, 2022, judgment was entered in favor of Defendants Lewis Lacey and the Village of Dolton as to the willful and wanton conduct claim and against Plaintiff Aja Seats, Special Administrator for the Deceased John Kyles and Plaintiff Sabrina Wright, Guardian of Duane Dunlap and therefore the Plaintiffs' claim of negligent supervision and training against the

Village of Dolton was rendered moot. Judgment was entered in favor of Plaintiff Sabrina Wright, Guardian of Duane Dunlap, and against Defendant the Village of Dolton as to the spoliation of evidence claim in the amount of $23,500,000. Judgment was entered in favor of Plaintiff Aja Seats, Special Administrator for Deceased Person John Christopher Kyles, and against Defendant the Village of Dolton on the spoliation of evidence claim in the amount of $10,000,000. A true and correct copy of the judgment is attached hereto as Exhibit C.

54. On June 20, 2024, the Illinois Court of Appeal affirmed the jury's verdict in Claimants' favor on their claim of spoliation of evidence. *Seats v. Village of Dolton*, 2024 IL App (1st) 230763-U. On December 11, 2024, the Village filed a petition for leave to appeal to the Illinois Supreme Court.

55. On December 27, 2024, in a Citation Proceeding under 735 ILCS 5/2-1402, Judgment Creditors moved for a turn-over by assignment of the Village's causes of action against its insurers pursuant to 735 ILCS 5/2-1402(c)(5). The Judgment Creditors allege in their motion that the Village possesses potential causes of action against its insurers, including AAIC, for acting in bad faith in refusing to settle the Underlying Action prior to trial. A true and correct copy of the Motion For Turn-Over is attached hereto at Exhibit D.

56. Judgment Creditors filed their Motion For Turnover of Judgment-Debtor's Cause of Action on Friday, December 27, 2024 at 6:50 pm. The court heard the motion the following Monday morning on December 30, 2024. Counsel retained by AAIC to associate in the defense did not receive notice of the motion or hearing date.

57. On December 30, 2024, the court granted Judgment Creditors' motion. The order provides that the Judgment Creditors "may proceed in their own names, or in the name of Defendant, Judgment Debtor, Village of Dolton in the prosecution of any causes of action the

Village of Dolton may possess against American Alternative Insurance Corporation." A true and correct copy of the December 30, 2024 Order is attached at Exhibit E.

58.     On March 26, 2026, the Illinois Supreme Court denied the Village's petition for leave to appeal.

<strong><u>THE COVERAGE DISPUTE</u></strong>

59.     The Policy is an indemnity only policy.

60.     Under the terms of the Policy, the Village had the duty to defend, investigate, and settle the claims asserted in the Underlying Action.

61.     Under the terms of the Policy, AAIC did not have a duty to defend, investigate or settle the claims asserted in the Underlying Action.

62.     The Claimants never made a demand to settle the claims in the Underlying Action for an amount within the limits of the AAIC Policy.

63.     The Village never sought AAIC's approval to settle the claims in the Underlying Action for an amount within the limits of the AAIC Policy.

64.     After the trial in the Underlying Action resulted in a judgment against the Village based only on Claimants' claim for spoliation of evidence, AAIC determined it owes no duty to indemnify the Village or to pay the Judgment Creditors with respect to the judgment entered in the Underlying Action because the Policy does not provide coverage for Claimants' claim for spoliation of evidence.

65.     On September 14, 2022, AAIC advised the Village that the Policy does not provide coverage for the judgment against the Village in the Underlying Action based on the claim for spoliation of evidence.

66.     AAIC now brings this action to obtain judicial declarations that the Policy provides no coverage for the judgment entered in the Underlying Action.

## COUNT I

### (No Coverage Under The Wrongful Act Insuring Agreement by Operation of The Law Enforcement Activities Exclusion)

67.     AAIC incorporates by reference paragraphs 1 through 66 as if the same were fully set forth herein.

68.     The Law Enforcement Activities Exclusion provides that the insurance under any Liability Coverage Part does not apply to: "Any liability arising out of law enforcement activities of any of your law enforcement departments or agencies, except with respect to the General Liability and Automobile Liability Coverage Parts to the extent coverage is provided under the Law Enforcement Endorsement if attached to such Coverage Parts."

69.     The judgment in the Underlying Action was based on liability arising out of law enforcement activities of the Village of Dolton police, including the officers' traffic enforcement in the Village, their attempt to stop and pursue Sorrells, and their maintenance of dash camera footage and data.

70.     The Law Enforcement Activities Exclusion precludes coverage under the Wrongful Act Liability Coverage Part because the judgment in the Underlying Action was based on liability arising out of law enforcement activities.

71.     Accordingly, the Policy does not afford coverage for the judgment entered in the Underlying Action under the Wrongful Act Liability Coverage Part pursuant to the Law Enforcement Endorsement Exclusion.

WHEREFORE, AAIC seeks a judgment that with respect to the Underlying Action, it has no duty to indemnify the Village of Dolton or pay the Judgment Creditors under the Wrongful Act Liability Coverage Part pursuant to operation of the Law Enforcement Endorsement Exclusion.

**COUNT II**

**(No Coverage Under The Insuring Agreements of The General Liability Coverage Part or The Automobile Liability Coverage Part)**

72.    AAIC incorporates by reference paragraphs 1 through 66 as if the same were fully set forth herein.

73.    The Insuring Agreement for the General Liability Coverage Part provides in relevant part, "we agree with you to indemnify **Insureds** for **Ultimate Net Loss**, in excess of the **Retained Limit**, that results from damages the **Insured** becomes legally obligated to pay because of **Bodily Injury**, **Personal Injury**, **Advertising Injury** or **Property Damage** to which the insurance under this Coverage Part applies."

74.    The Insuring Agreement for the Automobile Liability Coverage Part provides in relevant part, "we agree with you to indemnify **Insureds** for the **Ultimate Net Loss**, in excess of the **Retained Limit**, that results from damages the **Insured** becomes legally obligated to pay because of **Bodily Injury** or **Property Damage** to which this insurance under this Coverage Part applies, first arising out of an **Accident** during the **Policy Period** and resulting from the ownership, maintenance or use of a **Covered Automobile** in the **Coverage Territory**."

75.    The Policy defines "Bodily Injury" to mean: "Injury to the body, sickness or disease, including death resulting from any of these at any time, and if arising out of the foregoing: mental anguish, mental injury, disability, shock or fright."

76. The Policy defines "Property Damage" to mean in pertinent part, "[p]hysical injury to tangible property, including all resulting loss of use of such property. . . .  or [l]oss of use of tangible property that is not physically injured."

77. The judgment entered against the Village was for spoliation of evidence only.

78. Spoliation of evidence did not result in injury to the body, sickness or disease, physical injury to tangible property, or the loss of use of tangible property that is not physically injured. Rather the injury caused by spoliation of evidence is the plaintiff's inability to prove a cause of action.

79. Accordingly, the Policy does not afford coverage for the judgment entered  against the Village in the Underlying Action because the Ultimate Net Loss did not result from damages the Village became legally obligated to pay because of Bodily Injury or Property Damage.

WHEREFORE, AAIC seeks a judgment that with respect to the Underlying Action, it owes no duty to indemnify the Village of Dolton or pay the Judgment Creditors under the General Liability or the Automobile Coverage Parts because the Loss did not result from damages the Village became legally obligated to pay because of Bodily Injury or Property Damage as those terms are defined under the Policy.

## COUNT III

### (No Coverage Under The General Liability Coverage Part or The Automobile Coverage Part by Operation of The Owned Property and  Care, Custody and Control Exclusions)

80. AAIC incorporates by reference paragraphs 1 through 66 as if the same were set forth fully herein.

81. With respect to the General Liability Coverage Part, coverage is precluded in pertinent part for any Property Damage to property owned, occupied, or leased by an Insured or

purchased by an Insured under installment sales contract and personal property in the care, custody, or control of an Insured.

82.     With respect to the Automobile Liability Coverage Part, coverage is precluded in pertinent part for any Property Damage to or involving property owned or transported by the Insured or in the Insured's care, custody, or control.

83.     Judgment was entered for spoliation of evidence including dash cam footage and audio.

84.     To the extent the spoliation of the dash cam footage and audio constitutes Property Damage, as that term is defined in the Policy, then there is no coverage under the General Liability Coverage Part or the Automobile Coverage Part pursuant to the exclusions for owned property or the care, custody and control of the Insured.

WHEREFORE, AAIC seeks a judgment that it has no duty to indemnify the Village of Dolton or pay the Judgment Creditors with respect to the Underlying Action under the General Liability and Automobile Coverage Parts pursuant to operation of the exclusions for owned property or care, custody, and control of the Insured.

## **PRAYER FOR RELIEF**

AAIC hereby respectfully requests the entry of an order and judgment in its favor and against Defendants, declaring as follows:

   a. This court has jurisdiction over the parties and the subject matter of this litigation;

   b. The Policy does not provide coverage for the judgment entered in the Underlying Action;

   c. AAIC does not owe any duties or obligations to Defendant the Village of Dolton under the Policy in connection with the defense or judgment entered against the Village in the Underlying Action;

d. AAIC does not owe any duties or obligations to the Judgment Creditors in connection with the judgment entered against the Village of Dolton in the Underlying Action; and

e. AAIC is entitled to an award of its costs; and

f. Such other further relief as this Court deems just and appropriate.

Dated: March 26, 2025     Respectfully Submitted,

         **KENNEDYS CMK LLP**

         /s/ Benjamin A. Blume
         Benjamin A. Blume (#6200914)
         Karen Andersen Moran (#6224382)
         30 South Wacker Drive, Suite 3650
         Chicago, Illinois 60606
         Telephone: 312-800-5000
         Benjamin.blume@kennedyslaw.com
         Karen.andersenmoran@kennedyslaw.com

         Louis H. Kozloff (*pro hac vice* forthcoming)
         1600 Market Street, Suite 1410
         Philadelphia, PA 19103
         Tel: (267) 479-6700
         Fax: (215) 665-8475
         Louis.kozloff@kennedyslaw.com

         Attorneys for Plaintiff
         American Alternative Insurance Corporation