UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORPORATION, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | No. 25-cv-3226 |
| v. | ) ) | Judge April M. Perry |
| VILLAGE OF DOLTON; AJA SEATS, special administrator for decedent John Kyles; SABRINA WRIGHT, guardian for Duane Dunlap, | ) ) ) ) ) | |
| Defendants/Counter-Claimants/ Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| MARKEL AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Third-Party Defendant. | ) | |

## OPINION AND ORDER

This is an insurance dispute in which Plaintiff American Alternative Insurance

Corporation ("AAIC") asks for a declaratory judgment that it owes no part of the $33.5 million

judgment obtained in an underlying lawsuit involving Defendants the Village of Dolton

("Village"), Aja Seats, special administrator for decedent John Kyles ("Kyles"), and Sabrina

Wright, guardian for Duane Dunlap ("Dunlap") (collectively, "Defendants"). Doc. 4. In

response, Defendants bring counterclaims against AAIC and third-party claims against excess

insurer Markel American Insurance Company ("Markel") (collectively, the "Insurers") seeking

payment on the $33.5 million judgment. Doc. 18. Specifically, the counterclaims and third-party

claims (collectively, "counterclaims") allege against the Insurers breach of contract (Count I),

declaratory judgment for estoppel and waiver (Count II), bad faith failure to settle (Count III), and statutory bad faith under 215 ILCS § 5/155 (Count IV). *Id*. AAIC now moves for dismissal of Count III pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike certain allegations from Count IV under Federal Rule of Civil Procedure 12(f). Doc. 34. Markel joins in AAIC's motion to strike and also moves for dismissal of Counts I through III under Rule 12(b)(6). Doc. 42. For the reasons that follow, the motion to strike is denied, AAIC's motion to dismiss Count III is denied, and Markel's motion to dismiss is granted only as to Count II as it relates to Markel.

## BACKGROUND

On October 9, 2016, Kyles and Dunlap were passengers in a car which crashed during a pursuit by Village police officers. Doc. 18 at 38. As a result of the crash, Kyles was killed and Dunlap was paralyzed and suffered severe brain damage. *Id.* at 39. Kyles' estate and Dunlap's guardian subsequently filed a lawsuit against the Village and the two officers involved in the pursuit (the "Underlying Suit"). *Id.* at 38. The Underlying Suit alleged negligence, willful and wanton misconduct, and spoliation of evidence. *Id.* at 39; Doc. 18-1. Following a jury trial, the Village was found liable for spoliation of evidence and the jury awarded Kyles' estate $10 million in damages and Dunlap $23.5 million in damages. Doc. 18 at 39, 46.

AAIC is the Village's primary insurer, having issued to the Village policy number N1-A2-RL-0000044-01 (the "AAIC Policy"). *Id*. at 4. The AAIC Policy provides separate grants for General Liability, Automotive Liability, and Wrongful Act Liability each with $6 million in coverage. *Id*. at 40; Doc. 18-2 at 5. Markel is the Village's excess insurer, having issued it commercial excess liability policy number MKLM3EUL 100027 (the "Markel Policy"). Doc. 18 at 40; Doc. 18-3. The Markel Policy provides $5 million in excess coverage. Doc. 18-3 at 5.

Defendants claim that AAIC and Markel improperly refused to settle the Underlying Suit despite an overwhelming likelihood of a verdict exceeding $11 million. Doc. 18 at 41-42. Defendants allege that a jury verdict against the Village was likely because it was undisputed that there was a high-speed police chase in violation of Village policy and that the Village failed to preserve the dashcam video of the chase. *Id.* at 45-46. Defendants further allege that a verdict in excess of $11 million was likely because Kyles was only twenty-two years old at the time of his death and Dunlap requires a lifetime of care which is projected to cost $20 million. *Id.* at 42-44. Before the jury verdict, Defendants claim that "Claimants made numerous offers to settle their claims within the limits of coverage, including within the limits of the AAIC Policy alone," and the Village's demands to settle were rejected without justification. *Id.* at 40. After the jury verdict, the Insurers continued to reject settlement offers that would have been within both of their policy limits. *Id.* at 41.

## ANALYSIS

### I.      Motions to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed when a party fails to state a claim upon which relief can be granted. A 12(b)(6) motion is a challenge to the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The law is clear that a "formulaic

recitation of the elements of a cause of action will not do." *Id.* When considering a 12(b)(6)

motion, the Court accepts as true all well-pleaded facts and draws all reasonable inferences from

those facts in the pleader's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir.

2016).

### A. Breach of Contract (Count I)

Markel moves to dismiss Count I of the counterclaims, which alleges breach of contract.

Markel claims that this count is implausibly pled because Markel is "lumped" together with

AAIC and there are no specific facts pled to identify the particular terms of the policy breached.

For the reasons that follow, the Court disagrees.

Pursuant to Federal Rule of Civil Procedure 8(a)(2), all that a pleading must provide is a

short and plain statement of a claim showing that the pleader is entitled to relief. *Roldan v.

Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). In general, group pleading "does not violate Rule 8 so

long as the complaint provides sufficient detail to put the defendants on notice of the claims."

*Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 955 (N.D. Ill. 2024) (internal citations

omitted). This is especially true if a plaintiff "cannot specify which individual committed which

parts of the alleged misconduct before the benefit of discovery." *Linke v. Baits,* No. 3:23 C

50370, 2025 WL 2689922, at *8 (N.D. Ill. 2025) (internal citations omitted). Given that the

standard is notice pleading, only enough facts must be pled to "give the defendant fair notice of

the claim for relief and show the claim has substantive plausibility." *Runnion ex rel. Runnion v.

Girl Scouts of Greater Chi. and Nw. Indiana,* 786 F.3d 510, 517 (7th Cir. 2015) (internal citation

omitted).

In this case, the Court is not troubled by Defendants' "lumping" together of both Insurers

in some of the allegations. The cases cited by Markel that take issue with this practice are cases

4

in which pleading specificity under Rule 9(b) was required. *See Vicom, Inc. v. Harbridge Merchant Services, Inc*., 20 F.3d 771, 778 (7th Cir. 1994); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). This is significant, as Rule 9(b) requires the "who, what, when, where, and how" of a claim to be pled with particularity. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Breach of contract claims do not fall under Rule 9(b), but under Rule 8. As is discussed above, the only relevant question for Rule 8 is whether there is a plausible basis in the counterclaims for holding each defendant liable. Thus, Markel's complaints that the counterclaims fail to "plead specifics" about the "timing of conduct, communications, and the exhaustion of the underlying policy," with respect to each insurer are unpersuasive. *See* Doc. 43 at 5.

Under Illinois law, an insurance policy is a contract, and the standard rules of contract interpretation apply – the "primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777-78 (7th Cir. 2015). The elements of a claim for breach of contract under Illinois law are: (1) the existence of a valid, enforceable contract; (2) substantial performance by the plaintiff; (3) breach by the defendant; and (4) damages to the plaintiff. *See TAS Distributing Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007). Illinois reads into every contract an implied duty of good faith and fair dealing, which includes in insurance cases the duty to settle in good faith lawsuits brought against a policyholder. *See Iowa Physicians' Clinic Medical Foundation v. Physicians Ins. Co. of Wisconsin*, 547 F.3d 810, 812 (7th Cir. 2008).

Here, Defendants have plausibly alleged the existence of a valid, enforceable contract between the Village and Markel, specifically the Markel Policy. Although Markel is only the excess carrier, its coverage would have been implicated no later than the time of the $33.5

5

million verdict in the Underlying Suit. Given that Defendants have also alleged that Markel refused to settle the case even after this verdict when a settlement offer was made within the policy limits, Doc. 18 at 41, they have plausibly alleged a breach by Markel of its implied duty of good faith and fair dealing. This is all that is required for Markel to have fair notice of the claim against it.

This is not to say that the counterclaims are a model of clarity. At times Defendants allege that AAIC had "unilateral" authority to settle, *id.*, and at other times that "AAIC and Markel … maintained sole authority to settle the case." *Id.* at 49. The counterclaims also allege that at various points AAIC had "complete control" of the defense, *id.* at 41, but also that both Insurers "undertook the defense" and "paid for the defense." *Id.* at 49. These inconsistencies may be due to factual uncertainties as to when an excess carrier's duties kick in, *see, e.g.*, *First State Ins. Co. v. Montgomery Ward & Co., Inc*., 642 N.E.2d 715, 718 (Ill. App. Ct. 1994) (noting that excess insurers "do not usually participate in the defense of the case … unless it appears likely that the policy will be implicated"), as well as the fact that the Markel Policy gave it the right (but not obligation) to participate in the defense for any injury "to which this insurance may apply," as well as the right "at [Markel's] discretion" to "settle any claim or suit." Doc. 18-3 at 10. When, precisely, Markel's duty of good faith and fair dealing was triggered is a factual question not appropriately resolved at the pleading stage. The only thing that matters now is that Markel understands the nature of the claim so it can defend against the lawsuit. This is not a complex case, and Defendants' theory of liability against Markel is clear, although Markel will certainly be able to argue that the facts do not support Defendants' theory. Accordingly, Markel's motion to dismiss Count I is denied.

6

## B. Estoppel and Waiver (Count II)

Markel also challenges Count II, a claim for declaratory relief asserting estoppel and waiver. Under Illinois law, a "declaratory judgment action requires: (1) a plaintiff with a tangible, legal interest; (2) a defendant with an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Adkins Energy, LLC v. Delta–T Corp.,* 806 N.E.2d 1273, 1275 (Ill. App. Ct. 2004). In insurance cases, waiver and estoppel both prevent an insurer from belatedly asserting policy defenses.

Illinois recognizes claims for "general estoppel" and "equitable estoppel." *See Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n,* 927 F.3d 1007, 1012-13 (7th Cir. 2019). General estoppel prevents an insurer that believes a complaint alleging coverage is not covered under its policy from refusing to defend the insured. *Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1134 (Ill. 1999). Instead, the insurer must either "(1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage." *Id.* at 1134-1135. "If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." *Id.* at 1135. General estoppel does not apply if the "insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered." *Id.*

Equitable estoppel does not arise from an insurer's duty to defend. *See Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 814 (7th Cir. 2019). To state a cause of action for equitable estoppel, the following elements must be alleged: "(1) the party against whom estoppel is asserted must, by word or conduct, have misrepresented material facts; (2) the party against whom estoppel is asserted must have known that the misrepresentations were untrue; (3) the party claiming benefit of estoppel must not have known that the misrepresentations were

7

untrue; (4) the party against whom estoppel is asserted must have intended or expected that his or her misrepresentations would be acted upon by the party claiming benefit of estoppel; (5) the party claiming benefit of estoppel must have relied or acted upon the misrepresentations; and (6) the party claiming benefit of estoppel must be in a position of prejudice if the party against whom estoppel is asserted is permitted to deny the truth." *U.S. Fid. & Guar. Co. v. Cont'l Cas. Co.*, 556 N.E.2d 671, 677 (Ill. App. Ct. 1990).

In this case, Defendants do not argue that they have alleged a claim for general estoppel. Doc. 44 at 6. Instead, Defendants argue that they have properly raised a claim for equitable estoppel. *Id.* However, they have not plausibly alleged any misrepresentations by Markel or detrimental reliance by Defendants. The closest they come is by arguing in their responsive brief that Markel's failure to issue a reservation of rights letter led to the Village's "reasonable reliance that coverage existed and Markel would honor its policy obligations, to [the Village's] detriment." *Id.* But just saying the words "reasonable reliance" and "detriment" does not plausibly allege either. Because it is unclear how Defendants would have been in a different and better position now if Markel had issued a reservation of rights letter, there is no plausible claim alleged for equitable estoppel.

Nor has a plausible claim for waiver been alleged. Waiver is the "voluntary and intentional relinquishment of a known and existing right," which "arises from an affirmative act and not by operation of law." *Essex Ins. Co. v. Stage 2, Inc.*, 14 F.3d 1178, 1181 (7th Cir. 1994). "Waiver may be either express or implied, arising from acts, words, conduct, or knowledge of the insurer." *Id.* Waiver will be implied only if the act constituting waiver is "clear, unequivocal, and decisive." *Universal Fire & Cas. Ins. Co. v. Jabin*, 16 F.3d 1465, 1470 (7th Cir. 1994).

Waiver looks only to the unilateral actions of the insurer and requires no detrimental reliance by the insured. *Lumbermen's Mut. Cas. Co. v. Sykes*, 890 N.E.2d 1086, 1097 (Ill. App. Ct. 2008).

Here, Defendants base their theory of waiver on the fact that Markel participated in the litigation of the Underlying Suit for years without asserting any reservation of rights to deny coverage. Doc. 18 at 49. What Defendants do not explain is why a reservation of rights by Markel would have been appropriate. Reservation of rights letters are coupled with an insurer's duty to defend because it is potentially a conflict of interest for an insurer to defend a lawsuit while secretly knowing it does not plan to pay out on the policy. *See Royal Ins. Co. v. Process Design Assoc. Inc.*, 582 N.E.2d 1234, 1239 (Ill. App. Ct. 1991). Sending a reservation of rights allows the insured to "intelligently choose between retaining his own counsel or accepting the tender of defense counsel from the insurer." *Id*. In this case, it has not been plausibly alleged that Markel (as opposed to AAIC) had a duty to defend,[1] and Defendants have cited no authority for the proposition that a reservation of rights letter is ever appropriate absent such a duty. *Cf. American States Ins. Co. v. National Cycle, Inc.*, 631 N.E.2d 1292, 1297 (Ill. App. Ct. 1994) ("In the absence of a nonwaiver agreement, commonly referred to as a 'reservation of rights,' an insurer waives all questions of policy coverage *when it assumes an insured's defense*.") (emphasis added). Thus, the counterclaims have not plausibly alleged that Markel has voluntarily and intentionally waived anything. Count II is therefore dismissed as to Markel without prejudice.

### C. Bad Faith Failure to Settle (Count III)

Both AAIC and Markel move for dismissal of Count III, which alleges the Insurers engaged in bad faith for failing to settle the Underlying Suit. In Illinois, an insurer has a duty to

---

[1] According to the Markel Policy, Markel's duty to defend did not arise until the underlying insurance was exhausted. Doc. 18-3 at 10.

act in good faith when responding to a settlement offer. *Haddick v. Valor Ins.*, 763 N.E.2d 299, 303 (Ill. 2001). While an insurer may consider its own interests when evaluating a settlement offer, it must, "give at least equal consideration to the interests of the insured and if it fails so to it acts in bad faith." *Cernocky v. Indem. Ins. Co. of N. Am.*, 216 N.E.2d 198, 205 (Ill. App. Ct. 1966) (internal citation omitted). To state a cause of action for bad faith failure to settle, a plaintiff must allege that "(1) the duty to settle arose; (2) the insurer breached the duty; and (3) the breach caused injury to the insured." *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 922 F.3d 778, 785 (7th Cir. 2019) (internal citation omitted). "The duty to settle arises when a third party demands settlement within the policy limits, a claim has been made against the insured, and there is a reasonable probability of recovery in excess of policy limits and a reasonable probability of a finding of liability against the insured." *Id.* (internal citation omitted); *see also SwedishAmerican Hosp. Ass'n of Rockford v. Illinois State Med. Inter-Ins. Exch.*, 916 N.E.2d 80, 99 (Ill. App. Ct. 2009) ("In determining whether there was bad faith, the court will consider factors such as the existence of an offer by the plaintiff to settle within the policy limits, a refusal to negotiate, the advice of defense counsel, the prospect of an adverse verdict, and the potential for damages in excess of the policy limits."). "If the insurer breaches this duty, it may be liable for the entire judgment against its insured, including any amount in excess of policy limits." *Haddick*, 763 N.E.2d at 303.

The Court starts with the bad faith failure to settle claim against Markel. As already discussed, Markel's coverage layer was implicated no later than the time of the $33.5 million verdict in the Underlying Suit. Markel allegedly refused to settle the case even after this verdict when a settlement offer was made within Markel's policy limits. *See* Doc. 18 at 41. As there was both a reasonable probability of recovery within Markel's coverage layer and a reasonable

probability of a finding of liability at least by that time, Defendants have plausibly stated a claim for bad faith failure to settle against Markel.[2]

The Court next considers the bad faith failure to settle claim against AAIC. As the primary insurer, AAIC had the duty to engage in settlement discussions in good faith and to settle the case within policy limits if a verdict against the Village over policy limits was reasonably probable. *See Surgery Ctr. at 900 N. Michigan Ave.,* 922 F.3d at 785. Despite this, Defendants have alleged that AAIC rejected "numerous offers to settle [the] claims within the limits of coverage, including within the limits of the AAIC Policy alone." Doc. 18 at 40.[3] Defendants have also plausibly alleged that a substantial judgment was probable. *See id.* at 42-45. Although AAIC wants more specifics on the details and timing of the settlement offers tendered, that level of particularity is not required under Rule 8. Defendants have been clear that at least one offer within the AAIC policy limit was made and rejected. Therefore, Count III is sufficiently pled as it relates to AAIC.

## II. Motion to Strike under Rule 12(f)

---

[2] It is an open question to what extent Markel had control over defense and settlement negotiations, which will be important for Defendants to establish to succeed on the merits against Markel. *See Haddick*, 763 N.E.2d at 303. After all, an insurer cannot be liable for failing to settle a lawsuit that it did not have the power to settle. That said, the Court does not find persuasive Markel's argument that it owed its insured no duty unless it alone controlled settlement. An excess carrier will almost never be in sole control. This is why Illinois courts have recognized "a three-way relationship between the policyholder, the primary insurer and the excess insurer" creating "reciprocal duties of care in the conduct of settlement negotiations." *Schal Bovis, Inc. v. Casualty Ins. Co.*, 732 N.E.2d 1082, 1090 (Ill. App. Ct. 1999). Were the law otherwise, primary and excess carriers would never have a good faith duty to settle in cases for which there was clear and massive liability due to the presence of the other insurer. That is precisely what seems to be happening in this case, with AAIC arguing that it had no duty to settle a claim in good faith if an offer affected Markel's coverage layer, *see* Doc. 35 at 6, while Markel argues it had no duty to settle in good faith so long as AAIC had some control over the settlement.

[3] Markel points out that AAIC's complaint alleges that no settlement offers were made within AAIC's Policy limits. Doc. 35 at 10 n.3. However, for the purposes of this motion, the Court must assume the facts are as Defendants have alleged them. Either way, the parties will be conducting discovery on the timing and specifics of settlement offers.

11

Finally, the Court considers AAIC and Markel's motion to strike allegations from Count

IV claiming statutory bad faith under 215 ILCS § 5/155 ("Section 155"). Specifically, AAIC and

Markel move to strike the following from the counterclaims:

> 90. AAIC and Markel wrongfully, vexatiously, unreasonably, and in bad faith refused to:
> (a) cover the Underlying Lawsuit and Judgment; (b) properly investigate the Underlying
> Lawsuit and the alleged causes of action; and (c) evaluate the Defendants' demands for
> coverage ~~and settlement of all claims~~ prior to and after the Underlying Judgment—all in
> violation of Illinois Insurance Code, including but not limited to 215 ILCS 5/155 and
> 4/154.6 (the "Illinois Insurance Code").

> 91. Specifically, AAIC and Markel wrongfully, vexatiously, unreasonably, and in bad
> faith and breach of its duty of good faith and fair dealings failed to inform the Village of
> coverage decisions or the potential for non-coverage within a reasonable time, ~~forced the
> Village to go to trial despite settlement offers within the policy limits when an
> adverse and above-limits verdict was probable, refused to authorize a settlement
> within the policy limits during mediations, failed to act in good faith in responding
> to settlement opportunities, and failed to participate in both pre-trial and post-trial
> mediations and settlement negotiations in good faith.~~

Doc. 35 at 12. The Insurers argue that such allegations are prejudicial and will ultimately confuse

the factfinder because failure to settle a liability claim within policy limits cannot provide the

basis for a Section 155 claim as a matter of law. The Court disagrees that a motion to strike is

necessary.

Federal Rule of Civil Procedure 12(f) provides that "any redundant, immaterial,

impertinent, or scandalous matter" may be stricken from a pleading. Courts "have broad

discretion to strike filings that may contain […] irrelevant assertions." *Stephens v. Baker &

McKenzie LLP*, 769 F. App'x 362, 365 (7th Cir. 2019). However, motions to strike are

disfavored. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

"The party moving to strike has the burden of showing that the challenged allegations are so

unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly

prejudicial." *Pavlik v. FDIC*, No. 10-cv-816, 2010 WL 3937621, at *1 (N.D. Ill. 2010) (internal citation omitted).

The Insurers have not met their burden that the allegations of which they complain are devoid of merit, unworthy of consideration, and unduly prejudicial. To the extent the allegations are insufficient legally to support a Section 155 claim, the Insurers can move for summary judgment on that basis at a later stage of proceedings. To the extent the allegations will confuse a factfinder, the Insurers can ask the Court to ensure that the jury is properly instructed on the law and what it may consider as evidence for each counterclaim. The Insurers acknowledge that these allegations are properly pled in other portions of the counterclaims, so it is hard to imagine their repetition being unduly prejudicial. Motions like this are exactly why motions to strike are disfavored – the Insurers have devoted seven pages of briefing to complaining about the inclusion of fewer than seventy words in the counterclaims which they admit are properly included, just in a different location. The Court declines the opportunity to nitpick the pleading in that fashion.

## CONCLUSION

For the above reasons, AAIC and Markel's motion to strike is denied. AAIC's motion to dismiss Count III is denied, and Markel's motion to dismiss is granted only as to Count II as it relates to Markel. Defendants may amend Count II, to the extent they can do so consistent with this opinion.


Dated: February 24, 2026

_____
APRIL M. PERRY
United States District Judge